# UNITED STATES DISTRICT COURT
for the
District of Alaska

| | |
|---|---|
| United States of America<br>v.<br><br>CHARLES PHILLIPS, aka "Pup," and<br>LOIS LATRILLA PHILLIPS<br><br>*Defendant(s)* | )<br>)<br>) Case No. 3:18-mj-00436-DMS<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 10, 2018__ in the county of _____ in the _____ District of __Alaska__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(A) | Possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine |

This criminal complaint is based on these facts:

See Attached Affidavit of AST and FBI Task Force Officer Curtis I. Vik

☑ Continued on the attached sheet.

**Signature Redacted**

*Complainant's signature*

CURTIS I. VIK, AST and FBI TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/13/18

/S/ DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

*Judge's signature*

City and state: Anchorage, Alaska

DEBORAH M. SMITH, Chief U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR ALASKA

| IN THE MATTER OF THE ARREST OF | Case No. 3:18-mj-00436-DMS |
|---|---|
| CHARLES PHILLIPS, aka "Pup," and LOIS LATRILLA PHILLIPS | |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

I, CURTIS I. VIK, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make and submit this Affidavit in support of a Criminal Complaint charging Charles Phillips, aka "Pup," and Lois Latrilla Phillips, with possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). I write this Affidavit based on my personal investigation as well as the reports and statements of other law enforcement officers members of the Alaska State Troopers. I have no reason to believe the information relayed to me by other law enforcement officers is unreliable.

2. For the reasons stated herein, I submit that there is probable cause to believe that Charles Phillips, aka "Pup," and Lois Latrilla Phillips, have committed a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

## AFFIANT BACKGROUND

3. I am a State Trooper with the Alaska State Troopers (AST). I have been employed so since February 24, 2002. As an Alaska State Troopers I was assigned to patrol duties from 2002 until 2004 in Soldotna, Alaska. I was then assigned to the Alaska Bureau of Investigation from 2004 until 2010 in Palmer, Alaska. I was assigned to the Statewide Drug Enforcement unit from 2010 until March 2016. I am currently assigned as a Task Force Officer (TFO) to the Federal Bureau of Investigation (FBI) Anchorage Division, Safe Streets Task Force (SSTF). As part of my duties as an TFO, I investigate drug trafficking organizations, including the smuggling routes and techniques used for transporting controlled substances such as cocaine, methamphetamine, and heroin. My duties include interviewing witnesses, victims, and suspects; developing probable cause; handling and processing various types of evidence; and assembling cases for prosecution. I have worked multiple drug trafficking cases by performing such tasks as physical surveillance, subpoena service and analysis of returns, monitoring consensual recordings of jail calls of subjects, working with confidential human sources (CHS), and debriefing cooperating witnesses. My training also encompasses other investigative techniques not enumerated herein. I have been assigned to the FBI since March 16, 2016. I was given a special deputation by the Federal Bureau of Investigation on May 12, 2016. I was given a special deputation by the U.S. Marshals Service on February 9, 2017.

4. In addition to my basic law enforcement training at the AST Academy, I have attended other specialized training including suspect and witness interviewing, crime scene processing, computer crimes, vehicle theft, sexual assaults, DNA evidence, outlaw motorcycle gangs, mid-level narcotics investigations, and highway interdiction.

5. In April 2010, I completed a 24-hour highway interdiction course. This course was taught by the Drug Enforcement Agency (DEA) and the El Paso Intelligence Center (EPIC). This course trained me in the interdiction of illicit substances and other illegal items being transported by use of the highways.

6. In June 2010, I completed a 16-hour course entitled Mid-Level Narcotic Investigations taught by Professional Law Enforcement Training. This course provided instruction for investigating mid-level narcotics groups.

7. In August 2010, I completed the DEA Basic Drug Investigations training. This 80-hour course trained me in state and federal drug laws, development of probable cause, search and seizure law, drug identification and field testing, informant handling, marijuana eradication, surveillance techniques, street lingo, packaging and pricing, transportation and distribution of drugs. I also received formal and supervised hands-on training in the field-testing of cocaine, heroin, methamphetamines, and marijuana.

8. In August 2011, I completed a 24-hour course on hidden assets in motor vehicles. This course was conducted by the DEA. This course provided instruction on interdiction and finding hidden assets and illegal items in vehicles.

9. In September 2011, I completed a 32-hour course on jetway training. This course was conducted by the DEA. This course provided instruction on interdiction at

3

the airports, Marine Highway, trains, shipping companies and other modes of public transportation.

10. In January 2012, I completed a 32-hour course on clandestine laboratory investigations. This course was conducted by Network Environmental Systems, Inc. This course provided instruction on clandestine laboratory investigations, safety, and hazardous materials handling.

11. In October 2012, I completed a 24-hour course on narcotics management and leadership. This course was conducted by the DEA. This course provided instruction on informant handling, narcotics investigations, asset forfeitures, and investigative trends.

12. In June 2013, I completed a 24-hour course where I was certified as a Clandestine Laboratory Site Safety Officer. This course was conducted by Network Environmental Systems, Inc. and the US Drug Enforcement Agency. This course provided more advanced instruction on investigating clandestine laboratories, safety, and hazardous materials handling.

13. As part of my duties as a state trooper I have received over one thousand hours of training, including classes on drug interdiction and drug investigations. I currently hold an Advanced Police Certificate in the State of Alaska.

//

## RELEVANT STATUTES

14. 21 U.S.C. § 841 prohibits a person from knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with intent to manufacture, distribute, or dispense a controlled substance.

15. 18 U.S.C. § 2(a) states that whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

## COMMON PRACTICES OF DRUG TRAFFICKERS AND DRUG TRAFFICKING ORGANIZATIONS

16. Based on my training and experience, information from confidential informants and other drug investigators, I know that it is common for those involved in drug trafficking to have large sums of cash in their residence and vehicles, and that such cash constitutes proceeds from drug trafficking. I also know that it is common for drug transactions to be conducted with cash at the street level, between dealers and users.

17. Based on my training and experience, information from confidential informants and other drug investigators, I know that it is common for those involved in drug trafficking to use wire transfers, money orders, and other financial instruments and services to facilitate drug deals and to send and receive payments for drugs, and that records of these financial instruments and services, such as receipts, bank account numbers, money wire confirmation numbers, wires, and money orders, can be evidence of drug trafficking.

5

18. Based upon my training, experience and participation in these and other financial/drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

    a. The distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, such as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

    b. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering,

6

possession, sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the aforementioned records are frequently maintained in the drug trafficker's residence and sometimes in the traffickers' vehicle(s), computers, tablets, smart phones, digital cameras or other portable media devices.

**INVESTIGATION AND PROBABLE CAUSE**

*Surveillance of Coshok's K9 Castle at 11801 Old Seward Highway*

20. On August 8, 2018, surveillance was conducted on 11801 Old Seward Highway. This location is described best as a commercial dog kennel/dog day care center. During surveillance, Inv. Noll observed a white/cream colored Chevrolet Silverado (bearing AK plate 9861DL) pull into the dog kennel/daycare parking lot, located at 11801 Old Seward Highway. Investigator Cronin moved into position and observed the vehicle running and unoccupied, directly south of a small alley next to the building. Inv. Cronin further observed a female, identified as Lois Phillips, walk to the vehicle and get into the driver's seat. Lois Latrilla Phillips repositioned the vehicle into the alley. Inv. Cronin also observed an unidentified male get into the front passenger seat of the vehicle. The male had come from behind the dog kennel/daycare via the alley. Behind the kennel/daycare appeared to be a large CONEX. The vehicle then backed out and drove northbound on the Old Seward Highway.

//

//

7

### Execution of Search Warrants on August 10, 2018

21. On August 9, 2018, the United States Magistrate Court granted two search warrant applications seeking authorization to search the apartment of Charles Phillips, aka "Pup, and Lois Latrilla Phillips at 1910 E. 75th Avenue, Anchorage, Alaska, and 11801 Old Seward Highway.

22. On the morning of August 10, 2018, law enforcement officers made entry into the Phillips's apartment. Above the door of this apartment was a surveillance camera. Upon entering the apartment, law enforcement located Charles Phillips and Lois Phillips. No other individuals were inside the apartment.

23. During the search of the Phillips's apartment, law enforcement located approximately 120.9 grams of a crystalline substance, which tested presumptive positive for methamphetamine using a Nartec methamphetamine kit. Also found during the search was $24,942 cash. $22,300 of that was found in a locked airtight plastic container with the money divided with rubber bands in $1000 increments. Anchorage Police K9 "Doc" was directed to sniff the container with the $22,300 cash. APD Ofc. Nelson advised me that K9 "Doc" indicated for the odor of controlled substances coming from the container with the money. Investigators also found in the apartment digital scales, psilocybin mushrooms, small amounts of marijuana, various pills in baggies, a large box of unused needles, and a large amount of baggies, including baggies containing scenes from the children's animated movie "Frozen" that were identical to some of the baggies in which the 120.9 grams of methamphetamine were located.

8

24. During the search of the property at 11801 Old Seward Highway, law enforcement located the CONEX box, cutting a pad lock in order to access the contents. Inside the CONEX was a tote containing a garbage bag with approximately 5,581.6 gross grams of a crystalline substance suspected to be methamphetamines, and a digital scale. The amount of methamphetamine was approximately 12 pounds. Also found in the CONEX was a backpack containing a pay/owe ledger listing monies and quantiles. There was also a sheet listing names of Hells Angels prospects throughout the state of Alaska. A wedding invitation for Latrilla Phillips and Charles Phillips was also found in the backpack. There were other documents that were labeled as being addressed to Charles and Latrilla Phillips and a copy of Lois Latrilla Phillips's Alaska driver's license.

25. While searching the property at 11801 Old Seward Highway, investigators contacted a cooperating witness (CW1), who told investigators that he/she was living on the property. CW1 stated that it was Charles Phillips and Lois Latrilla Phillips that owned the CONEX on the property. CW1 has seen both Charles Phillips and Latrilla Phillips go into the CONEX on multiple occasions. The last time CW1 saw Charles Phillips access the CONEX was about a week ago.

26. The pad lock cut from the CONEX at 11801 Old Seward Highway was driven to 1910 E 75th Avenue. A key located on Lois Latrilla Phillips's keychain matched the key for the pad lock. Also located on this keychain were the keys to Lois Latrilla Phillips pickup truck.

//

### Background Information about Charles and Latrilla Phillips

20. Charles Phillips is a well-known member of the outlaw motorcycle gang (OMG) known as the Hells Angels. Charles Phillips was observed on August 6, 2018 wearing full the full Hells Angel patch which indicates that he is a full member of the Hells Angels. A check with social media further shows Charles Phillips wearing numerous items of Hells Angels clothing. Charles Phillips has a tattoo to the left of his left eye that says "HA," which is short for Hells Angels.

20. I know from my training and experience that outlaw motorcycle gang members earn certain articles of clothing and items that signify them as members of their outlaw motorcycle gang. These items are commonly paraded around in public to show who they are and to intimidate people. The Hells Angels jackets (also known as "cuts") are one such item. These items are coveted by the members and are forbidden to be worn by non-members.

21. I know from my training and experience that the Hells Angels are a criminal organization that is known for drug trafficking, arms trafficking, laundering money, racketeering, extortion, prostitution, trafficking stolen property, murder, violence and other criminal activities that are sanctioned by the organization There are approximately 444 chapters of the Hells Angels spanning over approximately 56 countries. There currently is a chapter of the Hells Angels in Anchorage which I believe Charles Phillips is a member of based upon my observations of him.

10

22. APSIN shows Charles Phillips is on federal probation for a conviction for possession of a controlled substance. Phillips has a 2006 State of Alaska felony conviction for Misconduct Involving a Controlled Substance (MICS) 2nd for manufacturing methamphetamine. Phillips has a 2004 misdemeanor conviction for MICS 4th.

23. Alaska Department of Public Safety records management system showed that Charles Phillips has an address of 1910 E. 75th Avenue, #2, Anchorage, Alaska as of April 9, 2018.

24. A check with the Alaska Records Management System (ARMS) identified Lois Latrilla Phillips as Charles Phillips's wife. A check of open source social media accounts also shows Latrilla Phillips listed as Charles Phillips's wife. APSIN shows that Lois Phillips has an address of 1910 E. 75th Avenue, #2, Anchorage, Alaska.

*Summary of Probable Cause*

42. I submit that there is sufficient probable cause to believe that Charles Phillips and Lois Latrilla Phillips have committed a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. I make this conclusion based on the information contained above, which includes:

   a. Law enforcement located 120.9 grams of methamphetamine, $24,942 cash, digital scales, bagging materials, and other drug related items at the residence of Charles Phillips and Lois Latrilla Phillips.

11

b. Law enforcement located 5,581.6 gross grams of methamphetamine, a digital scale, a ledger, and documents belonging to both Charles and Latrilla Phillips in a CONEX located at 11801 Old Seward Highway, Anchorage, Alaska. Both Charles Phillips and Lois Latrilla Phillips have been observed accessing the CONEX within the past week.

c. Law enforcement identified a key from Lois Latrilla Phillip's truck keychain that opened the lock cut from the CONEX at 11801 Old Seward Highway.

d. CW1 identifies Charles and Latrilla Phillips as the owners of the CONEX located on 11801 Old Seward Highway.

e. Charles Phillips is a known member of the Hells Angels, an organization known to traffic narcotics in Anchorage, Alaska and elsewhere.

43. Based on my training and experience, all of the information contained in this Affidavit leads me to believe that there is probable cause to believe that Charles Phillips, aka "Pup," and Lois Latrilla Phillips, have violated 21 U.S.C. § 841(a)(1) and (b)(1)(A), possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

//

//

//

//

12

## CONCLUSION

44. I respectfully request that the Court authorize a Criminal Complaint charging Charles Phillips, aka "Pup," and Lois Latrilla Phillips, with possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Signature Redacted

CURTIS I. VIK
Alaska State Trooper and Task Force Officer, FBI

Subscribed and sworn to before me this __13__ day of August, 2018

/S/ DEBORAH M. SMITH
CHIEF U.S. MAGISTRATE JUDGE
SIGNATURE REDACTED

DEBORAH M. SMITH
Chief U.S. Magistrate Judge
District of Alaska
Anchorage, Alaska